David S. Casey, Jr. (SBN 060768)
*dcasey@cglaw.com*
Gayle M. Blatt (SBN 122048)
*gmb@cglaw.com*
Jeremy Robinson (SBN 188325)
*jrobinson@cglaw.com*
Angela Jae Chun (SBN 248571)
*ajc@cglaw.com*
Alyssa Williams (SBN 310987)
*awilliams@cglaw.com*
**Casey Gerry Schenk**
**Francavilla Blatt & Penfield, LLP**
110 Laurel Street
San Diego, California 92101
(619) 238-1811 phone
(619) 544-9232 fax

Attorneys for Plaintiff and the
proposed Class

# United States District Court

## Northern District of California – San Jose Division

| | |
|---|---|
| **Samara Diner**, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**Apple Inc., a California Corporation**,<br><br>Apple. | Case No.<br><br>**Class Action Complaint and Complaint for Damages**<br><br>**Demand for Jury Trial** |

CLASS ACTION COMPLAINT

Plaintiff Samara Diner ("Plaintiff") by and through her undersigned attorneys, brings this class action against Apple Inc. ("Apple"), on behalf of herself and a class of similarly situated persons (the "Class"). Plaintiff alleges the following upon her own knowledge, or where there is no personal knowledge, upon the investigation of counsel and/or upon information and belief:

1.      Apple is one of the most recognizable tech companies in the world, specializing in consumer electronics that run on Apple's own proprietary operating system. Its flagship smartphone, the iPhone, has been marketed and sold in the United States since June 2007.

2.      Despite its name recognition, Apple must compete fiercely for its corner of the smartphone market. Most smartphone makers follow an annual release cycle, introducing new models every year. Apple is no exception, releasing at least one new iPhone model or sub model every year since the original iPhone was released.

3.      To encourage consumers to purchase the newest iPhone in such short intervals, Apple has to convince consumers they need to upgrade their device. One way to do this is by reducing the performance of older iPhones.

4.      On January 23, 2017, Apple released an upgrade to the operating system of iPhone models 7/6/6s and all older model iPhones (the "Affected iPhones"). Apple coerced Plaintiff and other Class members into updating their iPhones to iOS 10.2.1 because Apple claimed that the update provided "bug fixes and improves security" of their phones. While the 10.2.1 upgrade did include some bug fixes, unbeknownst to consumers, it also included a function that allowed Apple to substantially reduce performance of Affected iPhones.



5.      Under certain operating conditions, the 10.2.1 update caused Plaintiff's and Class members' iPhones to perform much slower than before the update was installed. Nothing in Apple's update notice mentioned any possibility of the slowdown. Further, Apple designed the operating system so that once installed, the installation cannot be undone.

CLASS ACTION COMPLAINT

6.      On December 28, 2017, Apple admitted that it intentionally slowed down consumers' devices. Apple claims that the 10.2.1 update "improves power management during peak workloads to avoid unexpected shutdowns on iPhone 6, iPhone 6 Plus, iPhone 6s, iPhone 6s Plus, and iPhone SE."[1]

7.      Apple made the December 28, 2017 statement in response to unequivocal evidence that it had been slowing down phones. The website Geekbench.com conducted testing in response to a Reddit.com post complaining of iPhone slowdowns. John Poole, the author of the Geekbench.com post concludes that the slowdown caused by the 10.2.1 update "is too abrupt to be just a function of battery condition. I believe (as do others) that Apple introduced a change to limit performance when battery condition decreases past a certain point."[2]

## THE PARTIES

8.      Defendant Apple Inc. is a California corporation with its headquarters and principal place of business located at 1 Infinite Loop in Cupertino, California.

9.      Plaintiff Samara Diner is a resident of San Diego, California. She purchased an iPhone 6s at the Apple store in Carlsbad, California in 2015. Diner installed the 10.2.1 update in or around February 2017. She noticed a change in her iPhone's performance following the update, resulting in her purchasing an iPhone 7 in July 2017.

## JURISDICTION AND VENUE

10.     Subject matter jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d) because there are more than one hundred Class Members, a majority of Class Members are citizens of states that are diverse from Apple, and the amount in controversy exceeds $5 million, exclusive of interest and costs.

11.     This Court has personal jurisdiction over Apple because California is Apple's state of incorporation, it maintains its principal place of business in this District, is registered to conduct

---

[1] See Apple, "*A Message to Our Customers about iPhone Batteries and Performance*" Apple.com (Dec. 28, 2017) (available online at https://www.apple.com/iphone-battery-and-performance).
[2] John Poole, *iPhone Performance and Battery Age*, GeekBench.com (Dec. 18, 2017) https://www.geekbench.com/blog/2017/12/iphone-performance-and-battery-age/.

1    business in California, and has sufficient minimum contacts with California.

2        12.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Apple

3    resides in this District and a substantial part of the events or omissions giving rise to Plaintiff's and

4    Class members' claims occurred in this District.

5                          **INTRADISTRICT ASSIGNMENT**

6        13.      Pursuant to Northern District of California Local Rule 3-2(c) and 3-2(e), assignment

7    to the San Jose Division of this District is proper because a substantial part of the events or

8    omissions giving rise to Plaintiff's claims originated from Apple's headquarters, located in one of

9    the counties served by the San Jose Division.

10                        **SPECIFIC FACTUAL ALLEGATIONS**

11       **A.       Apple makes an icon: the iPhone**

12       14.      Apple is one of the biggest tech companies in the world, first making a splash with

13   personal computers in the late 1970s and early 80s. Its products have historically been developed in

14   secrecy, with each new introduction often reinventing the market landscape—or inventing a new

15   market entirely.

16       15.      In 2007, Apple made waves with the introduction of the iPhone. While some balked

17   at the high price, many consumers and tech analysts were very taken with the then-$500 smartphone,

18   dubbing it the "Jesus phone."[3]

19       16.      The following year, Apple introduced the iPhone 3G, with new features like GPS and

20   3G data. Apple would continue to release at least one new iPhone every year to the present day.

21   Some have had compelling new features, like the introduction of a fingerprint sensor with the 5S.

22   Others are hard to distinguish from the previous model, sometimes limited to moderately improved

23   performance statistics, a slightly thinner body, and not much else.

24       17.      Regardless of the new features or lack thereof, Apple has marketed each iPhone as

25   The Next Big Thing that consumers must have, e.g.: "iPhone3G – Every pocket should have one.";

26

27

28   [3] See e.g., Paul Kedrosky, "The Jesus Phone," The Wall Street Journal (June 29, 2007, 11:59 p.m.)
     https://www.wsj.com/articles/SB118308453151652551.

"iPhone 4 – This changes everything. Again."; and "There's iPhone. And then there's everything else."

18.     Apple has been successful in creating market demand, with some customers willing to stand in line overnight to obtain the newest model. Consumer device reviewers often tout the next "iPhone killer," but no other smartphone has established such cultural and market dominance like the iPhone has.

19.     Despite its success, the iPhone has not been problem-free. In 2010, shortly after the launch of the iPhone 4, consumers began reporting dropped calls due to an issue with the antenna design. The problem was quickly named "antennagate."

20.     The iPhone 6 launched in 2015, but not without issues.  Users reported their iPhones would bend in their pockets. YouTube videos confirming the existence of "bendgate" quickly appeared. In response, Apple tweaked the design of the phone, increasing its weight, to fix the problem.

21.     One of the key selling points of iPhones is Apple's operating system. Unlike most smartphones, which run on some variant of Google's Android operating system, all iPhones use the mobile version of Apple's operating system, iOS, which is mostly limited to Apple devices. Apple has marketed iOS as more secure, user-friendly, and intuitive than Android.

22.     Importantly, Apple has always marketed and advertised its iPhones, including Affected iPhones, as being fully compatible and working well with iOS updates. In 2015, Apple started the marketing campaign entitled "Why There's Nothing Quite like iPhone." As part of this campaign, Apple stated that iPhones "should have hardware and software that were designed to work with each other. And enhance each other. By people who frequently see each other. That's how you make a phone that works ridiculously well."

23.     In reality, iPhones do not work well with iOS long term, and the software and hardware were not designed to "work ridiculously well" for a reasonable time.[4]

---

[4] See Bryan Chaffin, *Apple Redefines the Power of Plain Language in New iPhone Campaign*, Macobserver.com (Jul. 24, 2015) https://www.macobserver.com/tmo/article/apple-redefines-the-power-of-plain-language-in-new-iphone-campaign; Uzair Ghani, *Apple Launches 'Why There's*

24.     Issues of compatibility are likely exacerbated by the wide range of models still available for sale or for which Apple still provides ongoing tech support. Currently, Apple sells 5 different iPhone models and supports 7 different models.

**B. Apple forces an update to cover battery issues**

25.     Within the first year of availability of the iPhone 6 and 6s, consumers began reporting weird power failures with their devices. By at least as early as November 2016, Apple was aware that a number of iPhone 6/6s were experiencing sudden shutdown. Apple began receiving similar complaints on its website about iPhone 7 models in late 2016 and early 2017. The problem is now thought to be affecting all lithium-ion batteries in iPhone models 7/6/6s and older versions.

26.     Rechargeable lithium-ion batteries naturally lose some of their ability to hold a charge with age. While the batteries in the Affected iPhones have been aging and losing some of their capacity, Apple's operating system and software have grown more demanding with each update. Rather than publicly acknowledging this issue—and addressing the "sudden shutdown" problem openly—Apple tried to sweep everything under the rug.

27.     On January 23, 2017, Apple released an upgrade to iOS that was available to all iOS 10-compatible devices. For the iPhone, this included all models from the iPhone 5 on. Apple's release notes for the update are sparse, stating only that "iOS 10.2.1 includes bug fixes and improves the security of your device." Apple often includes language about "improving your device's performance"; notably, any such language was absent here.

**C. Apple admits it intentionally slowed down older iPhones**

28.     On December 9, 2017, redditor TeckFire revealed that Apple was slowing down older iPhones.[5] The outcry was immediate, with multiple major news outlets covering the story.

29.     After extensive negative media coverage, Apple released a semi-apology statement on December 28, 2017. It demonstrates that Apple knowingly and intentionally misled and deceived

---

*Nothing Quite Like iPhone Web Campaign*, WCCFTech.com (Jul. 25, 2015) https://wccftech.com/why-theres-nothing-quite-like-iphone/.
[5] Original post archived on Pastebin: https://pastebin.com/JergYngQ; active reddit thread: https://www.reddit.com/r/iphone/comments/7inu45/psa_iphone_slow_try_replacing_your_battery/ (last accessed Jan. 4, 2018).

consumers when it released the 10.2.1 update and subsequent updates:

> About a year ago in iOS 10.2.1, we delivered a software update that improves power management during peak workloads to avoid unexpected shutdowns on iPhone 6, iPhone 6 Plus, iPhone 6s, iPhone 6s Plus, and iPhone SE. With the update, iOS dynamically manages the maximum performance of some system components when needed to prevent a shutdown. While these changes may go unnoticed, in some cases users may experience longer launch times for apps and other reductions in performance.
>
> Customer response to iOS 10.2.1 was positive, as it successfully reduced the occurrence of unexpected shutdowns. We recently extended the same support for iPhone 7 and iPhone 7 Plus in iOS 11.2.
>
> Of course, when a chemically aged battery is replaced with a new one, iPhone performance returns to normal when operated in standard conditions.

30.     At the same time, Apple instituted a program for owners of older iPhones to replace out-of-warranty iPhone batteries for less than full price. However, Apple has not made any attempt to allow consumers to control the performance of their iPhones while requiring consumers to pay money to replace their battery. Apple also does not indicate how long this battery will last, nor whether future updates will further degrade the performance of Affected iPhones. Plaintiff is informed and believes that the replacement batteries are no better than the batteries originally installed, which only lasted a year in some cases. The battery replacement plan is available until December 2018. Consumers who replaced their battery will encounter the same problems in a year or two as they face now.

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3), or (c)(4) individually and on behalf of the members of the following proposed classes:

**A.     The Nationwide Class**

32.     Plaintiff seeks to represent a proposed nationwide class (the "Nationwide Class"), defined as follows:

> All persons in the United States who own or owned an iPhone smartphone that was introduced prior to 2017 (including the following models: iPhone 7, iPhone 7 Plus, iPhone 6, iPhone 6 Plus, iPhone 6s, iPhone 6s Plus, iPhone SE, iPhone 5s, iPhone 5c, and iPhone 5), and which was updated to iOS 10.2.1 (hereinafter referred to as "Affected iPhones").

**B.     The California Subclass**

33.     Plaintiff also seeks to represent a subclass comprised of California residents (the

"California Subclass"), defined as:

> All persons in the State of California who own or owned an Affected iPhone and who are "consumers," as that term is defined by California Civil Code section 1761(d), or who purchased "goods" or "consumer goods," as those terms are defined by California Civil Code sections 1761(a) and 1791(a), respectively.

34. Except where otherwise noted, "the Class" and "Class members" shall refer to members of the Nationwide Class and the California Subclass, collectively.

35. Excluded from the Class are Apple, its subsidiaries, affiliates, officers, directors, and employees; persons who have settled with and validly released Apple from separate, non-class legal actions against Apple based on the conduct alleged herein; counsel, and the immediate families of counsel, who represent Plaintiff in this action; the judge presiding over this action; and jurors who are impaneled to render a verdict on the claims alleged in this action.

36. Plaintiff is informed and believes that the proposed Class comprises millions of members. The Class is, therefore, so numerous and geographically dispersed that joinder of all members in one action is impracticable.

37. Apple has acted with respect to Plaintiff and members of the proposed Class in a manner generally applicable to each of them. There is a well-defined community interest in the questions of law and fact involved, which affect all Class members. The questions of law and fact common to the Class predominate over the questions that may affect individual Class members, including the following:

   a. Whether the 10.2.1 iOS update was intended by Apple to slow down Affected iPhones;

   b. Whether Apple altered iOS in a manner that slowed the performance of Affected iPhones;

   c. Whether the representations Apple has made about the nature and scope of the battery defect are false;

   d. Whether the representations Apple has made about the nature and scope of the 10.2.1 update omitted material facts;

   e. Whether Apple made false representations about the nature and scope of the

battery defect for the purpose of concealing it and avoiding the expense of recalling and replacing the batteries in Affected iPhones;

f.  Whether Apple omitted material facts about the nature and scope of the battery defect and/or 10.2.1 iOS update to avoid the expense of recalling and replacing the batteries in Affected iPhones;

g.  Whether Apple used the iOS modification to profit from Plaintiff and members of the proposed Class by inducing them to buy a new replacement for their Affected iPhones;

h.  Whether Apple fraudulently concealed material facts from Plaintiff and members of the proposed Class;

i.  Whether Apple violated the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750-1784;

j.  Whether Apple violated the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17209;

k.  Whether Apple has been unjustly enriched as a result of its fraudulent conduct;

l.  Whether Plaintiff's claims satisfy the criteria for class certification under Federal Rule of Civil Procedure 23 and, to the extent applicable, California Civil Code section 1781;

m.  Whether compensatory or consequential damages should be awarded to Plaintiff and members of the proposed Class;

n.  Whether punitive damages should be awarded to Plaintiff and members of the proposed Class;

o.  Whether restitution should be awarded to Plaintiff and members of the proposed Class;

p.  Whether other, additional relief is appropriate, and what that relief should be.

38.  Plaintiff's claims are typical of the claims of all members of the Class they propose to represent in this action.

39.  Plaintiff will fairly and adequately represent and protect the interests of the class, and

do not have interests that are antagonistic to or in conflict with those they seek to represent.

40.     Plaintiff has retained counsel who have extensive experience in the prosecution of class actions and other forms of complex litigation.

41.      In view of the complexity of the issues and the expense that an individual plaintiff would incur if he or she attempted to obtain relief from a large, transnational corporation such as Apple, the separate claims of individual Class members are monetarily insufficient to support separate actions. Because of the size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of in this Complaint.

42.     The Class is readily definable, and prosecution as a class action will eliminate the possibility of repetitious litigation and will provide redress for claims too small to support the expense of individual, complex litigation. Absent a class action, Class members will continue to suffer losses, Apple's violations of law will be allowed to proceed without a full, fair, judicially supervised remedy, and Apple will retain sums received as a result of its wrongdoing. A class action will provide a fair and efficient method for adjudicating this controversy.

43.     The prosecution of separate claims by individual Class members would create a risk of inconsistent or varying adjudications with respect to thousands of individual Class members, which would, as a practical matter, dispose of the interests of the Class members not parties to those separate actions or would substantially impair or impede their ability to protect their interests and enforce their rights.

44.     The conduct of Apple is generally applicable to the Class as a whole and Plaintiff seeks equitable remedies with respect to the Class as a whole. As such, the policies and practices of Apple make declaratory or equitable relief with respect to the Class as a whole appropriate. Fed. R. Civ. P. 23(b)(2).

## FIRST CAUSE OF ACTION
### Fraudulent Concealment
### (On Behalf of Plaintiff and the Nationwide Class)

45.     Plaintiff realleges and incorporates by reference the allegations contained in preceding paragraphs of this Complaint.

46.     At all times relevant herein, Apple made misrepresentations of material fact to Plaintiff and the proposed Class regarding the true nature and scope of the problems impacting the Affected iPhones, claiming that an "unknown" problem was causing certain Affected iPhones to shutdown unexpectedly. Apple also falsely represented the reason that it modified iOS (to prolong battery life) in Affected iPhones, knowing that the modification also substantially slowed the performance of Affected iPhones, which would cause consumers to replace those devices with new iPhones. Apple knew those representations were false when it made them, and did so for the purpose of diminishing the possibility that the facts described in this Complaint would be discovered by Plaintiff and members of the proposed Class.

47.     Apple concealed material facts from Plaintiff and the proposed Class, including but not limited to: the existence, nature, and scope of the battery defect; that modifying iOS for the ostensible purpose of prolonging battery life also caused Affected iPhones to perform substantially slower as their batteries aged, notwithstanding the iOS modification; that the battery defect could only be remedied by replacing the lithium-ion batteries in Affected iPhones; and that Apple concealed the foregoing facts from Plaintiff and members of the proposed Class as a means of avoiding the expense involved with rectifying the battery defect.

48.     Apple had a duty to disclose these facts, regardless of the existence of privity (see, e.g., Cal. Civ. Code § 1711), by virtue of (a) Apple's exclusive knowledge about the nature and scope of the battery defect, and that its modifications of iOS caused Affected iPhones to perform poorly; (b) Apple's awareness that Plaintiff and members of the proposed Class were not reasonably likely to discover these facts; (c) Apple's active concealment of those facts from Plaintiff and members of the Class (by making the false representations described herein); and (d) Apple's statutory and common-law obligations to disclose material information to the consumers who own or formerly owned Affected iPhones, as alleged herein.

49.     The facts Apple concealed from consumers are material and uniform to Plaintiff and to the members of the Class.

50.     Apple made misrepresentations of material fact and concealed the material facts alleged herein intentionally and/or recklessly, with the intention that Plaintiff and members of the

proposed Class would rely on its misrepresentations. Plaintiff and members of the proposed Class would have acted differently had the omitted facts been disclosed to them.

51.     As a proximate result of Apple's misrepresentations and concealment and suppression of material facts, Plaintiff and the proposed Class have sustained damage by: bearing the cost of purchasing new Affected iPhones; bearing the cost of repairs due to the battery defect and/or problems resulting from the slow performance caused by the iOS modification; and bearing the cost of purchasing replacement devices as a result of the battery defect and/or the slow performance caused by the iOS modification.

52.     Because Apple engaged in the conduct alleged herein deliberately and with willful and malicious intent, Plaintiff and the proposed Class are entitled to an award of punitive damages. The total amount of damages suffered by Plaintiff and members of the proposed Class will be proved at trial.

## SECOND CAUSE OF ACTION
**Unlawful, Fraudulent, and Unfair Business Practices in Violation of the Unfair Competition Law ("UCL") Cal. Bus. Prof. Code § 17200, et seq.**
**(On Behalf of Plaintiff and the Nationwide Class)**

53.     Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

54.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice.

55.     During the relevant time period, Apple has violated the UCL's proscription against engaging in unlawful conduct by virtue of (a) its fraudulent and deceitful conduct in violation of California Civil Code sections 1709 through 1711; and (b) its violations of the Consumers Legal Remedies Act, California Civil Code sections 1770(a)(5), (a)(7), and (a)(9).

56.     During the relevant time period, Apple has violated the UCL's proscription against fraud as a result of engaging in the fraudulent and deceitful conduct alleged herein.

57.     During the relevant time period, Apple has violated the UCL's proscription against unfair conduct as a result of engaging in the conduct alleged in this Complaint, which violates legislatively-declared policies articulated in California Civil Code sections 1710, 1711, and 1770,

subsections (a)(5), (a)(7), and (a)(9).

58.     Apple's violations of the UCL continue to this day. As a direct and proximate result of Apple's violations of the UCL, Plaintiff and Class members have suffered actual damage in that they paid more for their Affected iPhones than they would have had Apple not concealed the existence of the battery defect and the effects of its modification of iOS; they purchased phones that they would not have had they known the true nature of Apple's hardware and software problems; they purchased replacement batteries or upgraded to new phones because Apple omitted material facts about the nature of Affected Phones' batteries and performance. Further, Plaintiff and Class members also suffered actual damages when they were forced to replace their Affected iPhones as they became inoperable after the 10.2.1 iOS update.

59.     Pursuant to Section 17203 of the UCL, Plaintiff and the Class seek an order that requires Apple (a) to update iOS in a manner that prevents it from slowing the performance of Affected iPhones; (b) to provide owners of Affected iPhones with notice that the slow performance of those devices is caused by modifications Apple made to iOS; (c) reimburse current owners of Affected iPhones with the purchase price they paid for those devices after Apple knew, but failed to disclose, the existence of the battery defect and the slow performance caused by the iOS modification; (d) to provide current owners of Affected iPhones with new batteries for those devices free of charge; (e) to make full restitution of all moneys wrongfully obtained from its violations of the UCL, as alleged in this Complaint; and (f) requires Apple to pay the attorney fees and costs incurred by counsel for Plaintiff and the proposed Class in accordance with California Code of Civil Procedure section 1021.5.

**THIRD CAUSE OF ACTION**
**Violation of California's False and Misleading Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, et seq.**
**(On Behalf of Plaintiff and the Nationwide Class)**

60.     Plaintiff incorporates the above allegations by reference as if fully set forth herein.

61.     Apple's acts and practices, as described herein, have deceived and/or are likely to continue to deceive Class members and the public. Apple falsely advertised that iOS 10.2.1 and other subsequent iOS updates were fully compatible, and intended for use, with Affected iPhones,

and that such updates would not impair the operations or functionality of those phones. Also, in the alternative, Apple falsely advertised that Affected iPhones would not be impaired, or otherwise adversely impacted by, subsequent iOS updates, including iOS 10.2.1. Furthermore, Apple omitted material facts about the nature of Affected Phones' battery life and performance, including in particular, but not limited to, the impact of the 10.2.1 update on Affected Phones.

62.     Plaintiff and Class members were subjected to the same false, misleading, and deceptive statements made by Apple in promoting the use of its iOS 10.2.1 software update. Plaintiff and Class members relied on Apple's false, misleading, and deceptive statements (including omissions) in updating to iOS 10.2.1 with the fair and reasonable expectation of receiving equal or better performance and/or new features and functionality.

63.     By its actions, Apple disseminated uniform advertising concerning its iOS updates and impact of such updates on Older iPhones that, by their very nature, are unfair, deceptive, untrue, or misleading within the meaning of Cal. Bus. & Prof. Code § 17500, et seq. Such advertisements were likely to deceive the consuming public for the reasons detailed herein.

64.     The above-described false, misleading, and deceptive advertising Apple disseminated continues to have the potential to deceive consumers. Apple has not yet launched a public information campaign to alert consumers of the adverse nature of iOS 10.2.1 and other iOS updates, and their detrimental impact on the performance of Affected iPhones.

65.     In making and disseminating the statements alleged herein, Apple knew, or should have known, their advertisements were untrue and misleading in violation of Cal. Bus. & Prof. Code § 17500, et seq. Plaintiff and Class members based their decisions to purchase Affected iPhones in substantial part on Apple's omitted material facts. The revenues to Apple attributable to products sold based on those false and misleading advertisements amount to hundreds of millions of dollars. Plaintiff and the Class were injured in fact and lost money or property as a result.

66.     The misrepresentations and non-disclosures by Apple of the material facts detailed above constitute false and misleading advertising and, therefore, constitutes a violation of Cal. Bus. & Prof. Code § 17500, et seq.

67.     As a result of Apples' wrongful conduct, Plaintiff and the Class lost money. Plaintiff

and the Class are therefore entitled to restitution as shown at trial.

**FOURTH CAUSE OF ACTION**
**Quasi Contract/Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class)**

68.     Plaintiff incorporates by reference and realleges each and every paragraph above as though fully alleged herein.

69.     As a direct, proximate, and foreseeable result of Apple's acts and otherwise wrongful conduct, Plaintiff and Class members suffered damages. Apple profited and benefitted from the unjust sale of Affected iPhones, which caused Plaintiff and Class members to incur losses and damages.

70.     Apple has voluntarily accepted and retained these profits and benefits, derived from their customers, including Plaintiff and Class members, with full knowledge and awareness that retention of such profits and benefits is wrong and unlawful.

71.     By virtue of the conscious wrongdoing alleged in this Complaint, Apple has been unjustly enriched at the expense of Plaintiff and Class members, who are entitled to, and hereby seek, the disgorgement and restitution of Apple's wrongful profits, revenue, and benefits, to the extent and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Apple's unjust enrichment.

72.     Unless successful on the preceding counts of this Complaint, Plaintiff and the Class have no adequate remedy at law.

**FIFTH CAUSE OF ACTION**
**Unfair and Deceptive Acts and Practices in Violation of the Consumers Legal Remedies Act**
**(On Behalf of Plaintiff and the California Subclass)**

73.     Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

74.     This claim for relief is brought pursuant to the CLRA. Plaintiff and members of the California Subclass are "consumers," as that term is defined by California Civil Code section 1761(d) because they bought Affected iPhones for personal, family, or household purposes.

75.     Plaintiff and members of the California Subclass have engaged in a "transaction" with

Apple, as that term is defined by California Civil Code section 1761(e), because they have entered into a purchase agreement with Apple to purchase an Affected iPhone.

76.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purposes of the CLRA, and were undertaken by Apple in transactions intended to result in, and which resulted in, the sale of goods to consumers; namely, to sell replacement batteries, repair services, and/or replacement devices for their Affected iPhones.

77.     By engaging in the conduct alleged herein, Apple has violated subdivisions (a)(5), (a)(7), and (a)(9) of California Civil Code section 1770 by, misrepresenting and concealing the true nature and scope of the battery defect and that the modification of iOS would cause Affected iPhones to perform slowly and erratically and not disclosing those facts to Plaintiff and members of the proposed Class before they bore the cost of purchasing a replacement device for their Affected iPhone, purchasing a new Affected iPhone, and/or purchasing replacement parts and/or repair services as a result of the battery defect or the iOS modification.

78.     By concealing the battery defect and the iOS modification from Plaintiff and members of the proposed Class, Apple has represented, and continues to represent, that Affected iPhones have characteristics, uses and benefits, or qualities that they do not have, and that they are of a particular standard, quality, or grade, when they are not, in violation of Civil Code section 1770, subsections (a)(5) and (a)(7).

79.     By engaging in the conduct alleged herein, above, Apple has also advertised, and continues to advertise, goods with the intent not to sell them as advertised, in violation of California Civil Code section 1770(a)(9).

80.     Pursuant to Section 1782 of the CLRA and along with the filing of this Complaint, Plaintiff will send written notice to Apple by certified mail regarding its violations of the CLRA, thereby providing Apple with an opportunity to correct or otherwise rectify the problems alleged herein within 30 days of receipt of that notice.

81.     Unless Apple agrees to correct, repair, replace, or otherwise rectify the problems created by Apple's conduct as alleged herein within 30 days, Plaintiff will amend this Complaint to seek an order awarding actual damages and, because Apple engaged in the conduct alleged herein

deliberately and with willful and malicious intent, punitive damages.

82.     Plaintiff now seeks an order requiring Apple to (a) cease violating the CLRA by modifying iOS in a manner that prevents it from slowing the performance of Affected iPhones; (b) to provide owners of Affected iPhones with notice that the slow performance of those devices is caused by modifications Apple made to iOS; and (c) to provide current owners of Affected iPhones with new batteries for those devices free of charge.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on her own behalf and on behalf of the Class, respectfully requests that this Court enter an Order:

(1)     Certifying the proposed Class and California Subclass, and appointing Plaintiff as Class Representative;

(2)     Finding that Apple's conduct was negligent, deceptive, unfair, and unlawful as alleged herein;

(3)     Enjoining Apple from engaging in further negligent, deceptive, unfair, and unlawful business practices as alleged herein;

(4)     Awarding Plaintiff and Class members actual, compensatory, and consequential damages;

(5)     Awarding Plaintiff and Class members statutory damages and penalties, as allowed by law;

(6)     Awarding Plaintiff and Class members restitution and disgorgement;

(7)     Awarding Plaintiff and Class members punitive damages for the First Cause of Action;

(8)     Awarding Plaintiff and Class members pre-judgment and post-judgment interest;

(9)     Awarding Plaintiff and Class members reasonable attorneys' fees, costs, and expenses; and

(10)    Granting such other relief as the Court deems just and proper.

CLASS ACTION COMPLAINT

1

## **<u>DEMAND FOR JURY TRIAL</u>**

2      Plaintiff, on behalf of herself and the proposed Class, hereby demands a trial by jury as to

3  all matters so triable.

4   Dated:  January 8, 2018              CASEY GERRY SCHENK
                                        FRANCAVILLA BLATT & PENFIELD, LLP
5

6                                   By:   <u>s/ David S. Casey, Jr.</u>
                                         DAVID S. CASEY, JR.
7                                        *dcasey@cglaw.com*

8                                        Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28